UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    Case No. 17-CR-0116 (PJS/LIB)

                    Plaintiff,

v.                                                                    ORDER

KEVIN JAMES PETROSKE,

                    Defendant.

Melinda A. Williams and Manda M. Sertich, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Craig S. Hunter, NORTHLAND LAW, for defendant.

A jury convicted defendant Kevin James Petroske of production or attempted production of child pornography (Counts Two, Four, and Seven), attempted production of child pornography (Counts One, Three, Five, Six, and Eight), and possession of child pornography (Count Nine).  ECF No. 57.  This matter is before the Court on Petroske's motions for acquittal on Counts One through Eight or, in the alternative, a new trial. Fed. R. Crim. P. 29(c) and 33.  (Petroske does not challenge his conviction on Count Nine.)  For the reasons that follow, Petroske's motions are denied.

I.  BACKGROUND

Counts One through Eight of the original indictment charged Petroske with producing or attempting to produce child pornography, based on allegations that he surreptitiously recorded minors in various states of undress through their bathroom or

bedroom windows on at least eight occasions in 2011 and 2015.  ECF No. 1.  In order to convict Petroske of any of those charges, the jury had to find that Petroske used—or intended to use and took a substantial step toward using—a minor to engage in "sexually explicit conduct."  18 U.S.C. § 2251(a); *see also United States v. Young*, 613 F.3d 735, 742 (8th Cir. 2010).

"Sexually explicit conduct," as relevant to this case, includes the "lascivious exhibition of the genitals or pubic area of any person."  18 U.S.C. §§ 2251(a), 2256(2)(A)(v).  Although the controlling statutes do not define "lascivious exhibition," the Eighth Circuit applies the factors listed in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *and aff'd*, 813 F.2d 1231 (9th Cir. 1987).  *United States v. Johnson*, 639 F.3d 433, 439 (8th Cir. 2011).  The *Dost* factors include: "(1) whether the focal point of the picture is on the minor's genitals or pubic area; (2) whether the setting of the picture is sexually suggestive; (3) whether the minor is depicted in unnatural poses or inappropriate attire considering the minor's age; (4) whether the minor is fully or partially clothed or is nude; (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the image is intended to elicit a sexual response in the viewer."  *Johnson*, 639 F.3d at 439.  The Eighth Circuit also considers two additional factors: "(7) whether the image portrays the minor as a sexual object; and (8) any captions on

the images." *United States v. Lohse*, 797 F.3d 515, 520 (8th Cir. 2015) (citing Eighth

Circuit Model Crim. Jury Instr. 6.18.2252A).

Before trial, Petroske made two motions in limine.  First, Petroske asked the

Court to exclude from evidence the audio on the videos.  ECF No. 28.  The audio

contains Petroske's comments about what he is recording.  "Typical comments include

'oh, baby, here it comes,' 'nice pussy,' and 'can't see it yet.'"  ECF No. 30 at 1-2.  Relying

on the (expanded) *Dost* factors, the Court found that the audio was akin to aural

captions and was necessarily part of the videos Petroske produced.  The Court therefore

denied Petroske's motion.  *See id.* at 4 (citing *United States v. Ward*, 686 F.3d 879, 882 (8th

Cir. 2012)).

Second, Petroske asked the Court to rule that, as a matter of law, none of the

eight videos included a lascivious exhibition of the genitals of a minor.  ECF No. 40 at

3-6; *see also United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001).  After careful review,

the Court found that the videos identified in Counts One, Three, Five, Six, and Eight

either did not exhibit genitals at all or exhibited genitals so fleetingly that a reasonable

jury could not find the exhibition to be lascivious.  Nonetheless, the Court could not

rule out the possibility that Petroske had *intended* to capture a lascivious exhibition of

genitals when he recorded the videos underlying those five counts.  Accordingly, the

Court granted in part and denied in part Petroske's motion, allowing Counts One,

Three, Five, Six, and Eight to proceed on only the attempted-production charges, but allowing Counts Two, Four, and Seven to proceed on both the production and attempted-production charges.  *See* Superseding Indictment, ECF No. 45.

The government also filed motions in limine seeking to admit evidence that Petroske had been convicted in May 2015 of multiple counts of stalking and peeping at adult women and evidence regarding 51 videos found on Petroske's cell phone at the time he was arrested for that crime.  *See* ECF No. 39 at 28.  The Court agreed to admit the evidence under Fed. R. Evid. 404(b) for the limited purpose of establishing Petroske's intent.  *See* ECF No. 48.

At trial, almost none of the material facts were disputed.  Petroske took the stand and readily admitted that he had surreptitiously recorded his victims.  Trial Tr. Vol. II, ECF No. 69, at 31-39, 46-47; Trial Exs. 40-44.  Petroske also admitted that on some of the charged videos, he can be heard masturbating and commenting on the bodies of the victims.  *See* Trial Tr. Vol. II at 13-15, 47.  Petroske conceded that he is a voyeur—that is, a person who is sexually aroused by spying on unsuspecting people when they are naked or engaged in sexual conduct.  *See id.* at 8-9, 49-52.  Finally, Petroske admitted that he is sexually attracted to minors, wanted to record the exposed genitals of his victims, and would have been excited to record his victims engaging in sexual conduct. *Id.* at 36-37, 67.

Petroske disputed only one thing at trial:  He denied that he had used—or had intended to use—a minor to engage in "sexually explicit conduct."  Petroske emphasized that none of the videos that he had recorded captured a minor engaging in sexual intercourse or any other type of sexual behavior.  Petroske also stressed that his videos had not been shot or edited to focus on the genitals of the minors.  Neither of these points was in dispute; the only question was what weight the jury would give to these factors in deciding whether Petroske had produced or attempted to produce child pornography.

Despite the fact that almost nothing was in dispute, the government conducted a wide-ranging cross examination of Petroske that at times seemed to have little to do with the questions that the jury had to decide and much to do with embarrassing Petroske and inflaming the jurors' emotions.  In the course of its cross examination, the government elicited irrelevant testimony about, among other things, Petroske's character, sexual proclivities, and past convictions.  *See, e.g., id.* at 55-56 (eliciting testimony that Petroske scouted his victims and brought a stool and lotion with him to masturbate); *id.* at 63-64 (eliciting testimony about the prior victims of Petroske's stalking); *id.* at 65-66 (eliciting testimony that Petroske viewed the videos he produced as sexual).  Petroske's attorney did not object, most likely because his strategy was to

portray Petroske as repentant, honest, and open—a defendant who was sorry for

engaging in acts that were morally reprehensible but not criminal.

At the close of testimony, the Court admonished the government for straying far

beyond the issues that were in dispute:

> With respect to those [videos] that show genitals, the
> question is whether those genitals are lasciviously exhibited
> and if they're not, whether the defendant attempted to
> capture the lascivious exhibition of genitals. And with
> respect to those [videos] that don't have genitals, we have
> the attempt question. That's what we're deciding.
> Everything else, as far as I can tell, the defendant has
> conceded, literally everything else. And yet we spent tons of
> time yesterday on things that have nothing to do with those
> issues . . . .

> . . . Mr. Petroske can't be convicted because he's a
> creepy stalker guy . . . and yet much of the cross-
> examination was just 404(a) writ large: you know, easy
> pickins, hunting, your stool, your police scanner, how cold it
> was. None of that has anything to do with whether there is a
> lascivious exhibition of genitals on these visual depictions.
> It's all simply designed to inflame the jury and get them to
> convict him whether or not he created or attempted to create
> child pornography. And if there had been objections, there
> would've been a number of them sustained. . . .

> . . . [T]he Eighth Circuit, for better or worse, has told
> us that the question is not whether the depictions appeal or
> intended to appeal to the defendant's sexual interests, and
> yet we heard question after question . . . about his sexual
> interests: Did you find her a sexual object? Did you bring
> your lotion with you? Is that you masturbating on there?
> Why the government insists on focusing the jury on

something that the Eighth Circuit has told us we are not
supposed to be focusing on[1] is beyond me . . . .

Likewise the prior videos:  We heard about [victims
of Petroske's prior stalking-related crimes].  I let these prior
videos in on a 404(b) theory, on intent.  The theory I thought
was if you can see in these videos that the defendant is or is
not focusing on genitalia, it tells you what his intent was
when he was sitting outside the windows in Hibbing a year
or two years . . . later. . . . In the cross, we certainly heard
nothing [about the purpose for which the prior videos had
been admitted].

Trial Tr. Vol. III, ECF No. 70, at 4-6.

Because the Court was concerned that the cross-examination of Petroske had

gone "really far afield," *id.* at 6, the Court took a moment before closing arguments to

focus the jurors on the issues that had been left for their determination:

The defendant is not on trial here for trespassing or stalking
or [in]vading privacy or being a peeping tom.  He isn't
charged with any of those things in this case. . . . So the focus
of your deliberations today is going to be with respect to
each of the charged videos . . . Counts 1 through 8 . . .
whether the defendant produced or did he attempt to
produce a visual depiction of the lascivious exhibition of the
genitals or pubic area of a minor.

*Id.* at 10-11.

---

[1]*See United States v. Kemmerling*, 285 F.3d 644, 646 (8th Cir. 2002) ("We emphasize
that the relevant factual inquiry in this case is not whether the pictures in issue
appealed, or were intended to appeal, to [the defendant's] sexual interests but whether,
on their face, they appear to be of a sexual character.").

The jury convicted Petroske of all eight counts of production or attempted

production (and on the sole count of possession, which related to child pornography

that Petroske had not produced).  ECF No. 57.  Petroske now argues that there is

insufficient evidence to convict him of producing or attempting to produce child

pornography as charged in Counts One through Eight[2] and that he is entitled to a new

trial.

## II.  ANALYSIS

Petroske now renews and extends the arguments raised in his pretrial motions.

First, in support of his motion for acquittal, Petroske argues that there is insufficient

evidence that he used—or intended to use and took a substantial step toward using—a

minor to engage in "sexually explicit conduct" because none of the videos that he

recorded include the "lascivious exhibition of the genitals or pubic area of any person."

18 U.S.C. § 2251(a).  Second, in support of his motion for a new trial, Petroske argues

---

[2]At the request of defense counsel, the verdict form did not ask the jurors to
indicate with respect to Counts Two, Four, and Seven whether they were convicting
Petroske of *producing* child pornography or *attempting* to produce child pornography.
*See* ECF No. 57.  At the charge conference, the Court questioned Petroske about this
request, and Petroske acknowledged that he understood the potential consequences of
this decision on appeal—namely, that the reviewing court would not overturn his
conviction if it determined that, for any given count, the jury reasonably could have
found that he *attempted* to produce child pornography, even if the reviewing court did
not believe that a reasonable jury could have found that he succeeded in *producing* child
pornography.  At issue, then, is only the question of whether the evidence was
sufficient to support a conviction of attempt.

that the government prejudiced the jury during his cross-examination by focusing on irrelevant but inflammatory topics.  ECF No. 58 at 3.  Finally, and also in support of his motion for a new trial, Petroske argues that the Court erred in instructing the jury that "[v]isual depictions of children acting innocently can be considered lascivious if they are intended by the producer or editor to be sexual."  ECF No. 55 at 12; *see also* ECF No. 58 at 2.[3]  For the reasons described below, each argument fails.

## A.  Motion for Acquittal

Under Fed. R. Crim. P. 29, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  In ruling on a motion for acquittal, the Court must view the evidence in the light most favorable to the government, resolve all evidentiary conflicts in the government's favor, and accept all reasonable inferences drawn from the evidence that support the jury's verdict.  *United States v. Cook*, 603 F.3d 434, 437 (8th Cir. 2010).  The motion should be granted only if no reasonable jury could have found the defendant guilty.  *Id.*

Petroske argues that he cannot be convicted of production or attempted production of child pornography because there is no evidence that the minors whom he

---

[3]Petroske filed a pro se reply to the government's response to his motions.  But as long as Petroske is represented by counsel, Petroske must speak to the Court through counsel.  The Court will not accept pro se filings from Petroske.  *United States v. Agofsky*, 20 F.3d 866, 872 (8th Cir. 1994) ("There is no constitutional or statutory right to simultaneously proceed pro se and with benefit of counsel.").

recorded "were engaged in, or that it was probable they would engage in, sexual

conduct."  ECF No. 58 at 1.  But as the Court explained on numerous occasions, the

question in this case is not whether the minors in the videos were recorded engaging in

sexual intercourse or other "conduct related to sex."  (They were not.)  Instead, the

question in this case is whether the videos depicted or were intended to depict a

lascivious exhibition of the minors' genitals.  *See, e.g.*, Trial Tr. Vol. III at 4.

       Petroske argues that, to the extent that any of the videos that he recorded depict

the genitals of a minor, that depiction is not "lascivious" because the videos depict or

were intended to depict only "video voyeurism of mere nudity."  *Id.* at 40.  Petroske

emphasizes that, in recording the minors, he did not focus on their genitals, nor were

his recordings edited to draw attention to their genitals.

       Petroske contrasts his videos with the videos found to be lascivious in *Johnson*

and *United States v. Horn*, 187 F.3d 781, 789-90 (8th Cir. 1999).  In *Johnson*, the Eighth

Circuit relied in part on the fact that "the camera angle was such that in many of the

video clips . . . the frame encompassed [the minors'] nude bodies from their shoulders

to below their knees."  639 F.3d at 440-41.  And in *Horn*, the Eighth Circuit relied on the

fact that "[s]hots of young girls are freeze-framed at moments when their pubic areas

are most exposed, as, for instance, when they are doing cartwheels; and these areas are

at the center of the image and form the focus of the depiction."  187 F.3d at 790.  By

contrast, Petroske says, in his videos "[t]here is no evidence of any use of the camera or of editing of the visual depictions to draw attention to the minors' genitals." ECF No. 58 at 1; *see also* ECF No. 40 at 3 (arguing that "[e]very circuit case found . . . involves either or both the posing or manipulation of the subject or the framing, zooming in or other composing of the video or picture by the producer to emphasize and draw attention to the genital area.").

Petroske misunderstands the law. The relevant inquiry turns on the fact of, not the means of, lascivious exhibition. In other words, *Johnson* and *Horn* found that the exhibition of genitals was lascivious for certain reasons, but in this case, the jury could have found the exhibition of genitals to be lascivious for other reasons. The fact that Petroske's recordings did not focus on the genitals of the minors is just one of the *Dost* factors—factors that are "'neither definitive nor exhaustive.'" *Johnson*, 639 F.3d at 440 (quoting *Horn*, 187 F.3d at 789). Even if only one of the *Dost* factors had been present, the jury would not have been precluded from finding that the videos depicted a lascivious exhibition of the minors' genitals. *See, e.g., Lohse*, 797 F.3d at 521 ("In determining whether an image depicts a lascivious exhibition of genitals, the inquiry is always case specific, and even if a majority of the *Dost* factors are absent, an image may still qualify as a lascivious exhibition of genitals under § 2256(2)(A)(v)."); *United States v. Wallenfang*, 568 F.3d 649, 657 (8th Cir. 2009) ("'[A]ll six [*Dost*] factors need not be present

in order to bring the depiction under the proscription of the statute.'") (quoting *United States v. Wolf*, 890 F.2d 241, 245 (10th Cir. 1989); *Wolf*, 890 F.2d at 245 & n.6 ("We do not hold that more than one *Dost* factor must be present to constitute a violation of 18 U.S.C. § 2251(a).").

The jury could reasonably have found that Petroske produced or attempted to produce videos that contained the lascivious exhibition of genitals.  These were, after all, *voyeur* videos.  Voyeurism is a widely recognized type of sexual fetish or paraphilia, and voyeur videos are a well-known category of pornography.  When a voyeur such as Petroske sets out with his camera phone to peep through windows, he is setting out on a hunt—not a hunt to physically harm his intended victims, but a hunt to sexually exploit them by capturing nude images of them without their knowledge.  Petroske's videos are his trophies, and each "win" or "score" (to use Petroske's words) gives him (and voyeurs like him) sexual gratification.  After all, any voyeur could find countless images of naked adults and minors on the Internet.  But nude images of people who *consented* to be photographed do not excite a voyeur.

In short, the only reason why Petroske recorded his videos—and the only reason why anyone would watch those videos—is sexual gratification.  Like the videos of the defendant in *Johnson*, Petroske's videos "cannot reasonably be compared to innocent family photos, clinical depictions, or works of art."  *Johnson*, 639 F.3d at 439.

That fact, combined with the videos' "soundtrack" of Petroske masturbating and making crude sexual comments, could have led a reasonable jury to conclude that the exhibitions of genitals in Petroske's videos were lascivious. Likewise, a reasonable jury could have concluded that when Petroske set out each night—camera phone in hand—to stalk his prey, he did so with the intent of producing videos that contained the lascivious display of genitals. The fact that Petroske did not always *succeed* in his quest does not mean that he is not guilty of attempt.[4]

For these reasons, Petroske's motion for acquittal is denied.

### B.  Motion for a New Trial

Under Fed. R. Crim. P. 33, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." In ruling on a motion for a new trial, the Court "need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Collier*, 527 F.3d 695, 701 (8th Cir. 2008). But a motion for a new trial should be granted only where "the evidence preponderates sufficiently heavily against the verdict

---

[4]Obviously, Petroske could not know whether, on any particular night, he would be successful in his quest, just as a deer hunter cannot know, on any particular day, whether he will be successful in his hunt. But Petroske *intended* to produce child pornography (if given the opportunity) in the same way that a deer hunter *intends* to kill a deer (if given the opportunity). It is common that a defendant who is charged with attempting to commit a crime was foiled in his attempt (often because of happenstance); that is why the government charges him with *attempt*.

that a serious miscarriage of justice may have occurred . . . ." *Id.* (citation and quotations omitted).  The Court's authority to grant a new trial on the basis that the verdict is against the weight of the evidence must be "exercised sparingly and with caution." *Id.*

### 1.  Government's Cross-Examination of Petroske

Petroske argues that he is entitled to a new trial because the government's cross-examination of him prejudiced the jury by "focusing on [Petroske] being a creepy/stalky kind of person," ECF No. 58 at 3, and by suggesting that his sexual interests were relevant to the question of whether any of the videos included a lascivious exhibition of genitals.  As the Court has already noted, the Eighth Circuit has warned that "the relevant factual inquiry . . . is not whether the pictures in issue appealed, or were intended to appeal, to [the defendant's] sexual interests but whether, on their face, they appear to be of a sexual character."  *Kemmerling*, 285 F.3d at 646.[5]

_____

[5]In a prior order, this Court expressed its misgivings about the Eighth Circuit's warning:

> The Eighth Circuit has never really explained—and this Court has difficulty understanding—why evidence about whether a visual depiction was intended or designed to elicit a sexual response in a *viewer* is relevant, but evidence about whether a visual depiction was intended or designed to elicit a sexual response in the *defendant* is not relevant.  The defendant is, after all, a viewer—often the *only* viewer—of a visual depiction produced by the defendant.  Indeed, this point was recently made by the Eighth Circuit

The undersigned did indeed express concerns about the government's cross-examination of Petroske.  *See* Trial Tr. Vol. III at 4-6.  But Petroske's counsel did not object to any of the government's questions—likely for strategic reasons, as mentioned above—and thus there was no objection for the Court to sustain.  *See id.* at 5 ("[I]f there had been objections, there would've been a number of them sustained.").

In any event, it is highly unlikely that the government's cross-examination caused the jury to decide the case on an improper basis.  The facts were almost entirely undisputed; the jury simply had to look at the videos, apply the *Dost* factors, and decide whether Petroske had produced or attempted to produce videos that included the lascivious exhibition of the genitals of a minor.  Moreover, Petroske's conduct in stalking and surreptitiously recording young girls through their bedroom and bathroom windows was inherently inflammatory; the improper questions of the government were likely just "piling on."  And most importantly, both the Court (prior to closing arguments and during its final instructions) and the government (during its

---

itself in a decision that is in some tension with *Kemmerling*. *See United States v. Ward*, 686 F.3d 879, 884 (8th Cir. 2012) ("A reasonable jury could therefore find that [Ward] composed the images in order to elicit a sexual response in a viewer— himself." (citation and quotations omitted; alteration in original)).

*United States v. Petroske*, No. 17-CR-0116 (PJS/LIB), 2017 WL 3311210, at *1 n.1 (D. Minn. Aug. 3, 2017).

closing argument) took steps to minimize any prejudice to Petroske caused by the

government's improper questions.  *See id.* at 9-13, 16-31.  In its closing argument, the

government made clear that of the four elements it had to prove to convict Petroske of

production or attempted production of child pornography, "there's one, just one, that is

in dispute, element 2, sexually-explicit conduct."  *Id.* at 22.  The government then

properly framed questions related to the sixth *Dost* factor ("whether the image is

intended to elicit a sexual response in the viewer"):

> [W]e're not talking about the defendant's sexual reaction.  So
> who are we talking about?  Who is the viewer?  Members of
> the jury, this is child pornography.  The government submits
> to you that the viewer is the pedophile viewer, the
> voyeuristic viewer, people who like to see children
> sexualized, people who are sexually excited by secretly
> filming a non-consenting victim in her most private
> moments.  And you know that not only because your
> common sense tells you that, but because the defendant told
> you that, that to the pedophile viewer, the voyeuristic
> viewer these videos are sexual stimulation.

*Id.* at 25.  The government also attempted to cure its past oversteps by keeping its

discussion of the character evidence brief and tied to the relevant issues of law:

> Judge Schiltz's statement to you right before we gave closing
> arguments was entirely accurate.  The defendant is not
> charged with stalking.  He is not charged with being a
> peeping tom.  And don't you convict him for those reasons.
> You convict him because he produced and attempted to
> produce child pornography.  But the reason you heard about
> all that stalking—defense counsel's word in his closing—
> was because it is relevant to all of the substantial steps the

> defendant had to take to get to the point where he attempted
> and actually successfully produced child pornography.

*Id.* at 46.

Having closely observed the trial, the Court is confident that the jury would have returned the same verdict even if the government had not asked improper questions of Petroske.

## 2.  Improper Jury Instruction

Finally, Petroske takes issue with the Court's instruction to the jury that "[v]isual depictions of children acting innocently can be considered lascivious if they are intended by the producer or editor to be sexual."  ECF No. 55 at 12.  But Petroske's dispute is with the Eighth Circuit, not this Court.  As the Court explained to Petroske at both the pre-trial and charge conferences, this jury instruction is taken almost verbatim from the Eighth Circuit's decisions in *Ward* and *Johnson*.  *See Ward*, 686 F.3d at 883 ("'[E]ven images of children acting innocently can be considered lascivious if they are intended to be sexual[.]'") (quoting *Johnson*, 639 F.3d at 440).  The Court merely clarified that the Eighth Circuit's guidance applies to all "visual depictions" (not just "images") and that the intent in question is that of the "producer or editor" of the depiction (not the minor who is depicted).  *See, e.g.*, *Ward*, 686 F.3d at 883 ("'[T]he "lascivious exhibition" is not the work of the child, whose innocence is not in question, but of the producer or editor of the video.'") (quoting *Horn*, 187 F.3d at 790); *see also Wiegand*, 812

F.2d at 1244 ("[L]asciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles. . . .  The picture of a child 'engaged in sexually explicit conduct' within the meaning of 18 U.S.C. §§ 2251 and 2252 as defined by § 2255(2)(E) is a picture of a child's sex organs displayed lasciviously—that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.").

For these reasons, Petroske's motion for a new trial is denied

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant's motion for judgment of acquittal [ECF No. 58] and motion for a new trial [ECF No. 59] are DENIED.

Dated:  February 2, 2018                                    s/Patrick J. Schiltz
                                                            Patrick J. Schiltz
                                                            United States District Judge

-18-